UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
-------------------------------------------------------x

FRANCO SEBASTIANI,

               Plaintiff,                      **MEMORANDUM & ORDER**
                                                                       19-CV-3638 (PKC) (ST)

      - against -

PIK LEE,

               Defendant.
-------------------------------------------------------x
PAMELA K. CHEN, United States District Judge:

      Before the Court is Defendant Pik Lee's motion to dismiss Plaintiff Franco Sebastiani's intentional infliction of emotional distress ("IIED") claim, pursuant to Fed. R. Civ. P. 12(b)(6), for failing to state a claim upon which relief may be granted. At the pre-motion conference held on September 23, 2019, the Court preliminarily granted Defendant's motion, but because the Court had not notified the parties that it might rule from the bench, the parties were given the opportunity to submit additional briefing on the motion. Having considered this additional briefing and for the reasons set forth below, the Court reconsiders its preliminary ruling and denies the motion to dismiss Plaintiff's IIED claim, which will proceed to discovery.

**STANDARD OF REVIEW**

      To survive a motion to dismiss pursuant to Rule 12(b)(6), "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)); *see also Hogan v. Fischer*, 738 F.3d 509, 514 (2d Cir. 2013). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678; *see also*

1

*Hogan*, 738 F.3d at 514. "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Iqbal*, 556 U.S. at 678; *see also Pension Benefit Guar. Corp. ex rel. St. Vincent Catholic Med. Ctrs. Ret. Plan v. Morgan Stanley Inv. Mgmt. Inc.*, 712 F.3d 705, 729–30 (2d Cir. 2013). Determining whether a complaint states a plausible claim for relief is "a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Iqbal*, 556 U.S. at 679 (citation omitted). In considering a motion to dismiss for failure to state a claim, courts "may consider the facts alleged in the complaint, documents attached to the complaint as exhibits, and documents incorporated by reference in the complaint." *DiFolco v. MSNBC Cable L.L.C.*, 622 F.3d 104, 111 (2d Cir. 2010). "[T]he tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions." *Iqbal*, 556 U.S. at 678; *see also Pension Benefit Guar. Corp.*, 712 F.3d at 717 ("Although for the purposes of a motion to dismiss we must take all of the factual allegations in the complaint as true, we are not bound to accept as true a legal conclusion couched as a factual allegation." (internal quotation marks omitted)). "While legal conclusions can provide the framework of a complaint, they must be supported by factual allegations." *Pension Benefit Guar. Corp.*, 712 F.3d at 717 (quoting *Iqbal*, 556 U.S. at 679).

The pleading standards set forth in *Twombly* and *Iqbal* equally apply to cases where a complaint is removed from state court to federal court, like the case at bar. *See, e.g.*, *DiFolco*, 622 F.3d at 111; *Ohuche v. Merck & Co., Inc.*, No. 11-CV-2385 (SAS), 2011 WL 2682133, at *1 (S.D.N.Y. Jul. 7, 2011).

**DISCUSSION**

"Under New York law . . . a claim for IIED requires a showing of: '(i) extreme and outrageous conduct; (ii) intent to cause, or disregard of a substantial probability of causing, severe emotional distress; (iii) a causal connection between the conduct and injury; and (iv) severe

2

emotional distress.'" *Rich v. Fox News Network, LLC*, 939 F.3d 112 (2d Cir. 2019) (quoting *Howell v. N.Y. Post Co., Inc.*, 596 N.Y.S.2d 350, 353 (N.Y. 1993)). As the Second Circuit has explained:

> Under New York law, although the standard of outrageous conduct is strict, rigorous and difficult to satisfy, that is not the case when there is a deliberate and malicious campaign of harassment or intimidation. To be sure, it is manifestly neither practical nor desirable for the law to provide a remedy against any and all activity which an individual might find annoying. At the same time, where severe mental pain or anguish is inflicted through a deliberate and malicious campaign of harassment or intimidation, IIED provides a remedy. In other words, under New York law, the proper inquiry is not merely whether each individual act might be outrageous. Rather, the question is whether those actions—under the totality of the circumstances—amounted to a deliberate and malicious campaign.

*Id.* (internal quotation marks, citations, and alterations omitted).

As represented by the parties at the pre-motion conference, Plaintiff and Defendant agree that the applicable statute of limitations in this action began to run on December 5, 2017. In support of his IIED claim, Plaintiff, a former oral and maxillofacial surgery chief resident at Brooklyn Hospital Center (Kings County Supreme Court Complaint ("Compl."), Dkt. 1-3, ¶ 3), has alleged that Defendant, an anesthesiologist working at Brooklyn Hospital Center and Plaintiff's supervising physician (*id.* ¶¶ 4, 9–10), did the following during the relevant statutory period:[1]

---

[1] The Court declines to consider Plaintiff's arguments with respect to the facts alleged in the Amended Complaint in the related employment discrimination case, No. 19-CV-253, in reaching its decision. (*See* Dkt. 12 at ECF 2 (citations to "ECF" refer to the pagination generated by the Court's CM/ECF docketing system and not the document's internal pagination).) It is well-established that when deciding a motion to dismiss brought pursuant to Rule 12(b)(6) the Court is "confined to the allegations contained within the four corners of the complaint" and "any documents attached to the complaint as an exhibit or incorporated in it by reference." *Carlin v. Davidson Fink LLP*, 852 F.3d 207, 212 (2d Cir. 2017) (internal quotation marks and alterations omitted); *see also Chambers v. Time Warner, Inc.*, 282 F.3d 147, 153 (2d Cir. 2002); *Taylor v. Vt. Dep't of Educ.*, 313 F.3d 768, 776 (2d Cir. 2002) (limiting review "to the facts as presented within the four corners of the complaint, to documents attached to the complaint, or to documents incorporated within the complaint by reference"); *Pani v. Empire Blue Cross Blue Shield*, 152 F.3d

- "On or about December 19, 2017, Plaintiff received a voicemail from a phone number Plaintiff recognized as belonging to the Defendant in which a voice stated in sum and substance: I'll kill you." (*Id.* ¶ 34.)

- After Plaintiff obtained an order of protection on February 5, 2018 (*id.* ¶ 35), "in February 2018 Plaintiff received multiple phone calls from a phone number [he] recognized as belonging to the Defendant" (*id.* ¶ 36).

- "In June 2018 Defendant continued to engage in unwanted and harassing communication to Plaintiff." (*Id.* ¶ 37.)

- "On July 17, 2018, Plaintiff and his family members obtained another order of protection . . . In August 2018 Defendant again made unwanted communication and sent correspondence to Plaintiff's mother, using as the return address Plaintiff's former address, yet having a post mark from the city in which Plaintiff was then living. The contents contained religious references and intimated that Plaintiff had ruined her life. As a result, Plaintiff's mother felt threatened." (*Id.* ¶¶ 38–39.)

- "Contemporaneously [with the above], Plaintiff received a text message, also making a religious reference, from a number believed to belong to Defendant." (*Id.* ¶ 40.)

- "On or about January 31, 2018, Defendant was arrested for multiple charges relating to her treatment of the Plaintiff and violation of the Orders of Protection. Defendant subsequently pled guilty to charges related to the above conduct." (*Id.* ¶ 43.)

- Shortly after February 1, 2018, "[u]pon information and belief, Defendant then made false statements to the new programs [Plaintiff applied for and interviewed with] that were intended to malign and hurt Plaintiff so that he would not receive any placement there. The new program . . . immediately thereafter rescinded the residency offer." (*Id.* ¶¶ 44–47.)

Plaintiff also alleges, without any specific time references, the following with respect to the statutory period:

- "Defendant's harassment of Plaintiff . . . intensified throughout 2017 in a barrage of lewd, profane, explicit and threatening text messages and emails." (*Id.* ¶ 28.)

- "Defendant repeatedly threatened to destroy Plaintiff's career unless he resumed communication with Defendant and/or agreed to resume an intimate relationship with Defendant." (*Id.* ¶ 41.)

---

67, 71 (2d Cir. 1998); *Brass v. Am. Film Techs., Inc.*, 987 F.2d 142, 150 (2d Cir. 1993); *Cosmas v. Hassett*, 886 F.2d 8, 13 (2d Cir. 1989). The Amended Complaint was not attached as an exhibit, incorporated by reference, or otherwise a part of Plaintiff's Complaint in this case, and so the factual allegations contained within were not considered in the instant motion.

- "Plaintiff did not feel safe in New York, and was experiencing substantial anxiety and fear due to the death threats from Defendant. He was unable to sleep at night and suffered functional deficits during the day as well as physical manifestations of emotional distress." (*Id.* ¶ 42.)

Although it is true that "[t]he New York Court of Appeals has rarely allowed a plaintiff to sustain a claim for intentional infliction of emotional distress in an employment discrimination case," *Curcio v. Roosevelt Union Free Sch. Dist.*, No. 10-CV-5612 (SJF), 2012 WL 3646935, at *21 (E.D.N.Y. Aug. 22, 2012) (collecting cases), the Court finds that Plaintiff's allegation of Defendant making a death threat against him, combined with the allegations of continued harassment and Defendant's guilty plea to violating Plaintiff's Order of Protection, raises more than "a sheer possibility that [the] [D]efendant has acted unlawfully" in this case, *see Iqbal*, 556 U.S. at 678. At this stage, Plaintiff has pleaded sufficient allegations from which to plausibly infer that Defendant's actions, "under the totality of the circumstances" "amounted to a deliberate and malicious campaign" to inflict "severe mental pain or anguish," sufficient to plead an IIED claim under New York law. *See Rich*, 939 F.3d at 112; *see also Allam v. Meyers*, No. 09-CV-10580 (KMW), 2011 WL 721648, at *10–11 (S.D.N.Y. Feb. 24, 2011) (upholding IIED jury verdict based on a "five month-long, deliberate and malicious campaign of harassment and intimidation" that involved "threats of violence," death threats, and "relentless humiliation and emotional abuse"); *Turley v. ISG Lackawanna, Inc.*, 774 F.3d 140, 140, 157–62 (2d Cir. 2014) (finding "insults, slurs, evocations of the Ku Klux Klan, statements comparing black men to apes, death threats, and the placement of a noose dangling from the plaintiff's automobile" sufficient at the summary judgment phase); *Eves v. Ray*, 840 N.Y.S.2d 105, 106 (2d Dep't 2007) (affirming verdict on IIED counterclaim based on evidence that "on several occasions," the plaintiff "threatened the defendant both physically and financially, and stalked him"); *Cavallaro v. Pozzi*, 814 N.Y.S.2d 462, 465–66 (4th Dep't 2006) (deeming threat to "kill plaintiff and his

5

children" in course of a "deliberate and malicious campaign of harassment or intimidation" sufficiently outrageous to warrant consideration by a jury); *cf. Leontiev v. Varshavsky*, No. 16-CV-3595 (JSR), 2016 WL 4939080, at *3 n.3 (S.D.N.Y. Sept. 2, 2016) (finding that "thinly veiled threats" that did not include physical threats of violence are insufficient to state an IIED claim); *Owen v. Leventritt*, 571 N.Y.S.2d 25, 25 (1st Dep't 1991) (finding that defendant's alleged statement threatening to kill the plaintiff was insufficient to support an IIED claim in part because "the statements were not made directly to plaintiff, but were made in a public meeting").

In reconsidering its prior ruling, the Court recognizes that this case presents a close call. However, at this initial, pleading stage of the proceedings, the Court exercises its discretion to permit Plaintiff's IIED claim to move forward. There may come a time when dismissal is appropriate, after discovery has commenced and/or has been completed. The Court also notes that certain conduct that allegedly occurred prior to the statutory period—*e.g.*, Defendant's threat to harm patients if Plaintiff did not engage in a romantic relationship with her—while not actionable in itself, may be admissible at trial as bearing on Plaintiff's claim of emotional trauma, an element of an IIED claim. Lastly, "[t]he Court is . . . persuaded that where, as here, other claims, such as [Plaintiff's] Title VII and [New York City and New York State human rights law] discrimination claims, [are] going forward based on the same evidence as is being relied upon for the challenged claim, the better course is not to dismiss the challenged claim." *Bacchus v. New York City Dep't of Educ.*, 137 F. Supp. 3d 214, 241–42 (E.D.N.Y. 2015) (citing *Thibodeaux v. Travco Ins. Co.*, 13-CV-5599, 2014 WL 354656, at *2 (E.D.N.Y. Jan. 31, 2014) ("If one of a number of integrally related causes of action have to be tried, it makes little sense to grant a motion to dismiss as one or more of them, as it may prove necessary to hold yet another trial in the event that it is determined on appeal that the motion to dismiss was improperly granted.")); *see also Audi Vision Inc. v. RCA*

*Mfg. Co.*, 136 F.2d 621, 625 (2d Cir. 1943) ("[T]here seems no question that in the long run fragmentary disposal of what is essentially one matter is unfortunate not merely for the waste of time and expense caused the parties and the courts, but because of the mischance of differing dispositions of what is essentially a single controlling issue.") (internal quotation marks omitted).

## CONCLUSION

For the reasons set forth above, the Court reconsiders its prior preliminary ruling regarding Defendant's motion to dismiss and finds that Plaintiff has pleaded sufficient facts for his IIED claim to survive a Rule 12(b)(6) motion to dismiss and to proceed.

SO ORDERED.

*/s/ Pamela K. Chen*
Pamela K. Chen
United States District Judge

Dated: October 17, 2019
       Brooklyn, New York